# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| HIDDEN COVE PARK & MARINA, § <br> MARINE QUEST HIDDEN COVE, LP, § <br> MQTXM, LLC d/b/a TEXOMA PARK & § <br> MARINA § <br> § <br> v. § <br> § <br> LEXINGTON INSURANCE COMPANY, § <br> and AIG CLAIMS, INC. § | Civil Action No. 4:17-CV-00193 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Lexington Insurance Company ("Lexington") and AIG Claims, Inc.'s Motion for Partial Summary Judgment Regarding Policy Interpretation (Dkt. #31) and Plaintiffs Hidden Cove Park & Marina, Marine Quest Hidden Cove, LP (collectively, "Hidden Cove"), and MQTXM, LLC d/b/a Texoma Park & Marina's ("Texoma Park") Motion for Partial Summary Judgment Against Defendants Lexington Insurance Company and AIG Claims Inc. (Dkt. #32). After reviewing the motions, the Court finds that Defendants' Motion should be denied and Plaintiffs' Motion should be granted.

## BACKGROUND

Hidden Cove owns property at 20400 Hackberry Creek Park Rd., Denton County, The Colony, Texas 75034 and Texoma Park owns property at 449 Creek Park Rd., Grayson County, Whitesboro, Texas, 76273 (collectively, "the Property"). The Property was insured by Lexington. In May and June 2015, several storms occurred that caused damage to the Property. Lexington issued advanced payments on the policy to Plaintiffs of $1,000,000.00 to cover undisputed flood damage.

The dispute in this case arises out of the amount of coverage owed under the language in the policy. The policy provides for all-risk coverage except for losses listed in the exclusions, even caused concurrently with an included peril pursuant to the anti-concurrent-causation ("ACC") clause. The policy, in relevant part, reads:

> **B. Coverage**
>
> . . .
>
> **3. Covered Causes of Loss**
>
> Covered Causes of Loss means all risk of direct physical "loss" to Covered Property except those causes of "loss" listed in Section C. Exclusions.
>
> . . .
>
> **C. Exclusions**
>
> **1.** We will not pay for a "loss" if one or more of the following exclusions apply to the "loss" regardless of other causes or events that contribute to or aggravate the "loss", whether such causes or events act to produce the "loss" before, at the same time as or after the excluded causes or events:
>
> . . .
>
> **e. Flood**
> "Flood", unless a Limit of Insurance is shown on the Supplemental Declarations page, and then coverage applies only up to specified amount. Nevertheless, if a Limit of Insurance is not indicated on the Supplemental Declarations and "flood" results in fire or explosion, we will pay for the "loss" or damage caused by the resulting fire or explosion.

(Dkt. #31, Exhibit A at pp. 10–11). Further, the Supplemental Declarations page states:

> **Optional and Additional Coverages:**
>
> . . .
>
> | | **Limit of Insurance** |
> |---|---|
> | Flood: | |
> | Per Occurrence | $1,000,000 |
> | "Policy Period" Aggregate | $1,000,000 |

(Dkt. #31, Exhibit A at p. 8).

Based on this language, Defendants moved for partial summary judgment because they contend the policy language makes clear that flood is an exclusion with a $1,000,000.00 exception (Dkt. #31). Plaintiffs filed a response (Dkt. #39), Defendants filed a reply (Dkt. #41), and Plaintiffs

2

filed a sur-reply (Dkt. #46). Plaintiffs also moved for partial summary judgment based on the policy language, arguing that flood is a covered peril (Dkt. #32). Defendants filed a response (Dkt. #38) and Plaintiffs filed a reply (Dkt. #42).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning*

*News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Both Plaintiffs and Defendants move for summary judgment based on their interpretation of the language of the policy. Both parties agree that Defendants have paid the $1,000,000.00 in flood coverage, but dispute whether Plaintiffs can recover an additional payment for wind damage that was contributed to or aggravated by flood.

Defendants assert that the policy language clearly and unambiguously establishes that flood is an exclusion with a $1,000,000.00 exception. Defendants contend that, because flood is excluded after the $1,000,000.00 exception, the ACC clause applies to damage caused by flood even in combination with any covered loss, such as wind.

Plaintiffs claim that the policy language does not contain an exception to an exclusion because such a reading is unreasonable as it would allow Defendants to unilaterally decide what

4

is covered under the policy. Rather, Plaintiffs maintain that the language in the policy is an affirmation of coverage, which takes flood from an exclusion to a covered peril. Plaintiffs argue that Defendants could have included language to make flood an exclusion after payment reached the sublimit listed on the Supplemental Declarations page, but aver that Defendants did not. As such, Plaintiffs represent that the ACC clause does not apply, and they can recover for wind damage that may have been contributed to or aggravated by flood.

Insurance policies are simply a specialized form of contract. *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999). As such, general rules of contract construction apply. *Am. Mfrs. Mut. Ins. Co. v. Schafer*, 124 S.W.3d 154, 157 (Tex. 2003). The primary goal of contract construction "'is to give effect to the written expression of the parties' intent.'" *Nautilus Ins. Co. v. Country Oaks Apartment Ltd.*, 566 F.3d 452, 454 (5th Cir. 2009) (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)). While it is generally the insured's burden to show that a claim is within the scope of coverage, if "'the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply.'" *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691–92 (5th Cir. 2010) (quoting *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)).

Policy language that is unambiguous or, in other words, so clearly worded that it can be given a definite legal meaning, is applied as written. *Nautilus Ins. Co.*, 566 F.3d at 454 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). However, if a provision "is susceptible of two or more reasonable interpretations," the provision is deemed ambiguous and courts will construe the meaning of the ambiguous provision in the light most favorable to the insured. *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157 (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998)). Further, "[w]hen assessing the insurer's proffered exclusion, '[t]he court must

adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Trinity Universal Ins. Co.,* 592 F.3d at 692 (quoting *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 202 (Tex. 2004)); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) (citing *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977); *Continental Casualty Co. v. Warren*, 254 S.W.2d 762, 763 (1953); *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex. 1976)). Thus, the Court's "inquiry is whether the construction advanced by [Plaintiffs] is a reasonable interpretation." *Nat'l Union Fire Ins.*, 811 S.W.2d at 555.

Plaintiffs have met their burden to show that their interpretation of Defendants' proffered flood exclusion is reasonable. The exclusion clause does not clearly establish that, after payment of the $1,000,000.00 limit contained on the Supplemental Declarations page, flood becomes an exclusion. The policy states that flood is an exclusion "*unless* a Limit of Insurance is shown on the Supplemental Declarations page . . . ." (Dkt. #31, Exhibit A at pp. 10–11) (emphasis added). "Unless" means "except on the condition that." MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/unless (Nov. 1, 2017). Therefore, it is not unreasonable to read this part of the provision to mean flood is an exclusion except when there is a limit of insurance on the Supplemental Declarations page.

The sentence in the policy continues to say, "and then coverage applies only up to specified amount." (Dkt. #31, Exhibit A at p. 11). It is not unreasonable to interpret this section of the clause to create a sublimit of coverage, or a cap on the amount of coverage, as opposed to turning flood into an excluded peril. *See United Specialty Ins. Co. v. Porto Castelo, Inc.*, 2016 U.S. Dist. LEXIS 59715, at *10 n.5 (S.D. Tex. May 5, 2016) (citing *Six Flags, Inc. v. Westchester Surplus*

6

*Lines Ins. Co.*, 565 F.3d 948, 955 (5th Cir. 2009)) (explaining that a "sublimit sets the maximum liability for that particular kind of coverage, [i.e.,] a cap on liability that is less than the overall coverage limits."). A sublimit and an exclusion are not one and the same. *See id.*; *see also Six Flags*, 565 F.3d at 959 n.13 (citing *Altru Health Sys v. Am. Protection Ins. Co.*, 238 F.3d 961 (8th Cir. 2001); *Arjen Motor Hotel Corp. v. Gen. Accident Fire & Life Assurance Corp.*, 379 F.2d 265 (5th Cir. 1967); *Gilbert/Robinson, Inc. v. Sequoia Ins. Co.*, 655 S.W.2d 581 (Mo. App. 1983)). "An intent to exclude coverage must be expressed in clear and unambiguous language. . . . If [Lexington] wanted to exclude [flood coverage after the $1,000,000.00 sublimit], then it was incumbent upon [Lexington] to expressly and clearly state the exclusion in the policy." *Nat'l Union Fire Ins.*, 811 S.W.2d at 556.

Defendants argue that the Fifth Circuit in *Stewart* precludes Plaintiffs' interpretation as a reasonable interpretation of the policy. *Stewart Enters., Inc. v. RSUI Indem. Co.*, 614 F.3d 117, 125 (5th Cir. 2010) (per curiam). This argument is unpersuasive. The parties in *Stewart* presented different issues for the Fifth Circuit Court of Appeals to decide. In *Stewart*, the plaintiff had three levels of insurance, and the Fifth Circuit needed to determine whether the third layer of insurance included flood coverage and whether the ACC clause barred recovery for flood caused concurrently with wind. *Id.* at 118–19. The plaintiff in that case interpreted the policy to mean that flood was covered up to the limit and then, after reaching the limit, flood would become an excluded peril. *See id.* at 119 (arguing that the third layer of coverage "adopts the limits set forth in the [first two levels'] policies, covering any of the $25 million in flood coverage unpaid by [the first two levels of insurance], and that the ACC clause only operates above that $25 million limit."). Accordingly, the Fifth Circuit never considered whether flood was an exclusion with an exception or if flood was a covered loss with a sublimit. *See generally id.* Therefore, even though some

7

language in the Fifth Circuit's opinion is instructive as to one reasonable interpretation of the policy,[1] it does not hold that there is only one way to interpret the policy or foreclose the reasonableness of Plaintiffs' interpretation. *See generally id.* As such, *Stewart* is not determinative in this case.

Aside from being a reasonable interpretation, Plaintiffs' interpretation of the policy also makes practical sense. Under Defendants' reading, Plaintiffs' "total recovery could depend on arbitrary accounting decisions by" Defendants. *Id.* at 124. For example, if, as happened here, Lexington paid $1,000,000.00 in coverage labeled as flood damage, Lexington would not have to pay anything for wind damage if it could not be separated from flood damage; however, if Lexington paid for wind damage that was also aggravated by flood first, then Lexington would still be able to cover any pure flood damage under the $1,000,000.00 limit. This essentially gives Defendants the ability to decide what is covered under the policy, even though certain losses could possibly otherwise have been covered. *USAA Texas Lloyds Co. v. Menchaca*, 2017 WL 1311752, at *10 (Tex. Apr. 7, 2017) (citing *JAW the Pointe v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015)). Thus, the Court finds Plaintiffs' interpretation reasonable, without determining whether Defendants' interpretation is more reasonable or a more accurate reflection of the parties' written intent. *See Trinity Universal Ins. Co.,* 592 F.3d at 692 (quoting *Utica Nat'l Ins. Co.,* 141 S.W.3d at 202); *Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555 (citing *Glover*, 545 S.W.2d at 761; *Continental Casualty Co.*, 254 S.W.2d at 763 (1953); *Ramsay*, 533 S.W.2d at 349).

---

[1] "Under the [primary insurance] policy, flood is excluded from coverage, with the exception of a $10 million sublimit, such that up to $10 million in damage, flood is treated as an included peril." *Stewart Enters., Inc.*, 614 F.3d at 123. "To the extent P(2) defines flood as an excluded peril, the prefatory clause bars recovery for damage caused by an included peril acting in conjunction with flood." *Id.* at 126.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Partial Summary Judgment Regarding Policy Interpretation (Dkt. #31) is hereby **DENIED** and Plaintiffs' Motion for Partial Summary Judgment Against Defendants Lexington Insurance Company and AIG Claims Inc. (Dkt. #32) is hereby **GRANTED**. It is further **ORDERED** that:

1. Flood did not become an excluded peril once the sublimits for flood were exhausted.

2. The Policy's anti-concurrent-causation clause does not apply to damages caused by a combination of flood and wind.

3. Lexington remains liable for any damages caused by pure wind, and the combination of wind and flood if such damages proven by the Plaintiffs.

**SIGNED this 9th day of November, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE